UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NANCY MAFFIA,

                Plaintiff,

v.                                         Case No.  5:06-cv-53-Oc-10GRJ

MICHAEL J. ASTRUE[1], Commissioner of
Social Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for a period of disability and Disability Insurance Benefits. (Doc. 5.) The Commissioner has answered (Doc. 11) and both parties have filed briefs outlining their respective positions. (Docs. 17 & 19.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

Plaintiff filed an application for social security disability insurance on November 12, 2003, claiming a disability onset date of October 26, 2003. (R. 47-49.) Plaintiff's application was denied initially, (R. 32-34.) and upon reconsideration. Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner,

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 30.) The ALJ conducted Plaintiff's administrative hearing on August 8, 2005 (R. 284-313) and issued a decision unfavorable to Plaintiff on October 27, 2005. (R. 9-20.)  The Appeals Council denied Plaintiff's request for review on January 27, 2006. (R. 4-8.)  On February 7, 2006, Plaintiff filed the instant appeal to this Court (Doc. 1).

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
  In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. SUMMARY OF THE EVIDENCE

Plaintiff was born on April 15, 1960 and was forty-five (45) years old at the time of the decision. (R. 47.) Plaintiff has a high school equivalency degree (R. 292-93), and has past relevant work history as an automobile salesperson. (R. 293.) Plaintiff contends that she became disabled on October 26, 2003 due to vaginal and intestinal problems. (R. 47, 51.)

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff suffers from the following impairments: chronic pelvic pain secondary to recurrent tubo-ovarian adhesions and intestinal obstruction, status post right foot surgery for bunion and hammertoes, and obesity. (R. 19.)

---

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] See id.

[22] See Doughty 245 F.3d at 1278 n.2.

The Court's evaluation of the medical record will focus upon Plaintiff's gynecological problems, as that is the primary focus of Plaintiff's argument. Plaintiff has had chronic pelvic pain dating back to 1987, when she was treated at Nassau County Medical Center. Plaintiff underwent a pelvic ultrasound (R. 104) and had a pre-operative diagnosis of "severe pelvic adhesions." Plaintiff underwent a modified uterine suspension, a puncture of an ovarian cyst, a bowel resection and an enterostomy at three points in the small bowel. (R. 108.) Plaintiff was discharged on March 12, 1987 and Dr. Stimler, a physician at Nassau County Medical Center noted that Plaintiff's disposition had improved and her prognosis was good. (R. 111.)

On several occasions from December 1999 through January 2002, Plaintiff underwent aspiration of multiple left tubo-ovarian abscesses. In October 2002, Plaintiff underwent an updated CT scan of her abdomen, which showed no evidence of bowel obstruction, but that Plaintiff did have a 5cm left ovarian cyst. In November 2003, Plaintiff presented to the emergency room at North Shore University Hospital with complaints of abdominal pain for four days and a fever for two days, nausea and vomiting, as well as vaginal bleeding. Plaintiff underwent a transvaginal ultrasound, which showed a recurrent tubo-ovarian abscess. (R. 154-156.) In a letter dated November 21, 2003, Benjamin Goldman, M.D., Plaintiff's treating physician throughout this period, stated that Plaintiff suffered from chronic pain that is serious and inoperable. (R. 124.)

On January 16, 2004, Plaintiff underwent a consultative examination with Jasjit Pawha, M.D., at the request of the New York State Agency. (R. 217-220.) Dr. Pawha found that Plaintiff had no restrictions in her ability to sit, stand or walk; however, Dr.

Pawha stated that Plaintiff may be restricted when she is in pain. In addition, Dr. Pawha noted that Plaintiff had mild to moderate restrictions for lifting, carrying, pushing and pulling.

Medical records from U.S. Mishra, M.D., dated March through June 2005 show that Plaintiff presented with complaints of chronic pelvic pain and anxiety. Plaintiff was prescribed Vicodin for her pelvic pain and Xanax for her anxiety. The treatment records repeatedly document that Plaintiff's pelvic pain and anxiety were stable and controlled with medications. (R. 223-250, 267-278.)

Dr. Mishra completed a Medical Source Statement of Ability to do Work-Related Activities form regarding Plaintiff on August 1, 2005. (R. 340-342.) Dr. Mishra noted that Plaintiff could lift/carry 20 pounds occasionally and frequently. Plaintiff could stand and/or walk less than 2 hours in an 8-hour workday and must periodically alternate between sitting and standing to relieve pain or discomfort. Dr. Mashra also noted that Plaintiff was limited in her ability to push and pull with her lower extremities and that Plaintiff would likely miss work about three times per month. Plaintiff's only postural limitation was that she could only occasionally crouch and crawl. Plaintiff was found by Dr. Mashra to be limited in her ability to reach in all directions and in her fine manipulation abilities.

## IV. **DISCUSSION**

Plaintiff's raises two arguments on appeal. First, Plaintiff argues that the ALJ erred by rejecting the opinion of Plaintiff's treating physician, Dr. Goldman. Secondly,

Plaintiff argues that the ALJ erred by violating the Eleventh Circuit pain standard by rejecting her subjective allegations of disabling pain and limitations with no evidentiary basis for doing so.

**A. The ALJ Did Not Violate the Treating Physician Rule.**

The Court will turn first to Plaintiff's argument regarding the opinion of Plaintiff's treating physician, Dr. Goldman. Plaintiff argues that the ALJ rejected the opinion of Dr. Goldman without explicit and adequate reasons for doing so.  The basic problem with Plaintiff's argument is that Dr. Goldman never provided a medical opinion concerning the functional limitations that were related to Plaintiff's chronic pain. Instead of rendering a medical opinion with regard to Plaintiff's functional limitations, Dr. Goldman simply authored a one paragraph letter dated November 21, 2003 addressed "To Whom It May Concern" that confirmed Plaintiff had chronic pain and the condition was inoperable. The ALJ appropriately referenced the letter in his decision.[23]

It is evident from a review of the ALJ's decision that the ALJ acknowledged Plaintiff's chronic pain as an impairment and further acknowledged that Plaintiff had been diagnosed with endometriosis by Dr. Goldman. However, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."[24]  Thus, because Dr. Goldman never provided any opinion as to whether Plaintiff's pain resulted in any functional limitations that would prevent her from performing the full range of sedentary work, there was no

---

[23] R. 13, 124.

[24] Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

reason for the ALJ to specifically state in his decision that he was discounting the opinion of Dr. Goldman.

Instead, the ALJ thoroughly discussed and analyzed the medical evidence to determine whether Plaintiff had severe functional limitations from her impairments, including pain, and whether the functional limitations impacted her ability to perform the full range of work at the sedentary level. Therefore, even assuming *arguendo* that Dr. Goldman's one sentence statement that Plaintiff has chronic pain and that her condition is inoperable was the equivalent to an opinion from a treating physician, the ALJ still did not err because the ALJ's determination that Plaintiff can perform the full range of work at the sedentary level is fully supported by the weight of the evidence. A review of the decision and the evidence addressed by the ALJ in his decision fully supports this conclusion.

The ALJ specifically found that despite Plaintiff's ongoing gynecological and bowel problems, Plaintiff "was able to continue working despite these conditions,"[25] that treatment notes dated since her alleged onset date of October 26, 2003 "show that her pelvic pain has been ameliorated by pain medications,"[26] and that Plaintiff has "required no additional surgical procedures for treatment of her tubo-ovarian adhesions and cysts since November 2003."[27] The ALJ also noted that Plaintiff has not had any recurrence of her small bowel obstruction since 1987 and that CT scans performed in 2002 and 2004 showed no evidence of bowel obstruction.

---

[25] R. 17.

[26] Id.

[27] Id.

Moreover, the ALJ took into account that although Plaintiff was being treated by Dr. Mishra for chronic pelvic pain, the treatment notes repeatedly reflected that Plaintiff's physical examinations were essentially benign and that Plaintiff's pelvic pain was stable and controlled with medications.[28] Lastly, the ALJ properly noted that even though Plaintiff experienced pain, she was still able to take care of her personal hygiene, go grocery shopping, perform household chores and cook., all of which are activities that would evidence the Plaintiff was not as limited from pain as she represented.

Therefore, for these reasons, the Court concludes that the ALJ did not violate the treating physician rule. The ALJ's findings regarding Plaintiff's functional limitations are not in conflict with any of Dr. Goldman's medical records or opinions and the ALJ's conclusion that Plaintiff could perform the full range of sedentary work is supported by the weight of the medical evidence.

**B. The ALJ Did Not Violate the Eleventh Circuit Pain Standard.**

The Court turns next to Plaintiff's second argument that the ALJ also violated the Eleventh Circuit pain standard.

The law concerning the analysis of subjective complaints of pain is well settled. In evaluating disability, the ALJ must consider all of a claimant's impairments, including his subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical

---

[28] Id.

evidence.[29] The Eleventh Circuit has set forth a three-part test for determining when a disability may be established based on subjective complaints of pain.[30] The "pain standard" requires that the plaintiff first produce medical or other evidence of an underlying medical condition. Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[31] "Pain alone can be disabling, even when its existence is unsupported by objective evidence."[32] However, a claimant's subjective complaints of pain do not conclusively establish a disability unless accompanied by medical evidence.[33]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the

---

[29] 20 C.F.R. § 404.1528.

[30] Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

[31] Id.

[32] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[33] 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms *shall not alone be conclusive evidence of disability* as defined in this section; there *must* be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability") (emphasis added).

record must be obvious as to the credibility finding.[34]  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[35]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[36] assessment to Plaintiff's subjective complaints by noting that Plaintiff presented objective medical evidence that established that chronic pelvic pain secondary to recurrent tubo-ovarian adhesions and intestinal obstruction, status post right foot surgery for bunion and hammertoes, and obesity were medical impairments. Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's complaints regarding her level of pain and inability to work were not wholly credible.

As discussed above, the ALJ articulated a number of reasons for finding that Plaintiff's claims were not fully credible. The ALJ conducted a thorough examination of Plaintiff's medical history, including Plaintiff's complaints of pain. The ALJ noted and properly recognized that Plaintiff complained of "pain in her abdomen"[37] that Plaintiff used "Vicodin for her pelvic pain,"[38] and that Plaintiff "underwent aspiration of multiple left tubo-ovarian abscesses."[39] The ALJ also took into account the fact that despite Plaintiff's claim of disabling pain from her gynecological problems and other bowel

---

[34] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[35] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[36] Marbury, 957 F.2d at 839.

[37] R. 16.

[38] R. 15.

[39] R. 13.

related problems she was able to continue working prior to her alleged onset date. Moreover, the treatment notes beginning from the date of onset in October 2003 evidence that Plaintiff's pelvic pain had been controlled by medications.

Lastly, the ALJ in his decision properly took note of Plaintiff's activities of daily living which were inconsistent with her claims of disabling symptoms and limitations. While the Plaintiff's activities of daily living are not conclusive evidence that she was not disabled during the relevant period of time, these activities are, nonetheless, consistent with the ability to perform sedentary level work.

Accordingly, the Court concludes that the ALJ followed the Eleventh Circuit pain standard in analyzing whether the Plaintiff's subjective complaints were credible. The ALJ articulated specific reasons for rejecting Plaintiff's testimony that she had disabling symptoms or limitation, which reasons were based upon the medical evidence and other substantial evidence of record. Where, as here, an ALJ has made a clearly articulated credibility finding based upon substantial supporting evidence in the record, a reviewing court should not disturb the findings by the ALJ.

Plaintiff finally argues that the ALJ erred by relying exclusively on the Grids in lieu of obtaining testimony from a vocational expert. As discussed above, the ALJ appropriately found that Plaintiff's pain was not severe enough to prevent Plaintiff from performing the full range of sedentary work. Where, as here, the RFC of the claimant only includes exertional limitations or non-exertional limitations that do not significantly erode the occupational base or significantly limit basic work skills, the ALJ may rely exclusively on the Grids and is not required to obtain the testimony of a VE to assess whether there are a significant number of jobs in the national economy that Plaintiff can

perform at her given functional level.[40]  Accordingly, the ALJ did not err by relying upon the Grids at step five in concluding that Plaintiff is not disabled.

### V.  CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 28, 2007.

*Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel

---

[40] 20 C.F.R. §§ 404.1569, 416.1569(a); 416.969a; Phillips, 357 F.3d at 1242-3.